**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOROTHY GARDNER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No.: 19-cv-5572** |
| | : | |
| **CHAD T. BOONE, et al.,** | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**SITARSKI, M.J.**                                          **February 9, 2023**

Presently pending before the Court are Defendant's Motion for Protective Order (Def.'s Mot. for Protective Order, ECF No. 53), Plaintiff's Motion to Compel Depositions and Production of Documents (Pl.'s Mot. to Compel, ECF No. 54), additional documents submitted in support of Defendant's Motion for Protective Order (Def.'s Amended Doc., ECF No. 55), Defendant's opposition to the Motion to Compel (Def.'s Resp., ECF No. 56), Plaintiff's opposition to the Motion for Protective Order (Pl.'s Resp., ECF No. 56), and Defendant's reply brief in further support of its Motion for Protective Order (Def.'s Reply, ECF No. 58).  For the reasons that follow, Defendant's Motion for Protective Order and Plaintiff's Motion to Compel Depositions and Production of Documents shall be **GRANTED IN PART** and **DENIED IN PART**.

I.        **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

This case arises out of a traffic accident that occurred on or about July 12, 2019. According to the Amended Complaint, Defendant Chad T. Boone, the operator of a tractor trailer, "t-boned" Plaintiff's Dorothy Gardner's vehicle, causing her to sustain serious, painful,

and permanent injuries requiring surgery and inpatient hospitalization and rehabilitation.  (Notice of Removal, ECF No. 1, Ex. 1 at ¶ 24).

On or about November 5, 2019, Gardner filed a Complaint in the Philadelphia County Court of Common Pleas against Boone and Defendant Schneider National Carriers, Inc. ("Schneider"), a private, interstate, common carrier licensed by the United States Department of Transportation that allegedly entrusted the tractor trailer to Boone.  (Notice of Removal, ECF No. 1, Ex. 1 at ¶¶ 4, 24).  The matter was removed on November 26, 2019, and Gardner filed an Amended Complaint on December 17, 2019.  (Notice of Removal, ECF No. 1; Am. Compl., ECF No. 9).  Gardner advances three claims: (1) a claim of negligence against Boone; (2) a vicarious liability claim against Schneider (based, inter alia, on its responsibilities as an interstate motor carrier under the "Federal Motor Carrier Safety Administration Regulations"); and (3) a claim for "direct corporate liability" against Schneider.  (*Id.* at 5-13) (emphasis omitted).

Defendants moved to dismiss in part, but their motion was denied by Judge Jones on September 22, 2020.  (Defs.' Mot. to Dismiss, ECF No. 11; Pl.'s Resp., ECF No. 12; Order, ECF No. 13).  On October 21, 2020, Defendants answered the Amended Complaint.  (Answer, ECF No. 14).  The parties consented to my jurisdiction on January 12, 2022.  (Consent & Order, ECF No. 27).

On June 10, 2022, Gardner propounded by e-mail Requests for Production of Documents ("First RFPs").  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. A at 1-2).  A second set of Requests for Production of Documents ("Second RFPs") was e-mailed on or about July 8, 2022.  (*Id.* at 1). On July 15, 2022, Schneider set forth its objections to the "June 10, 2022 demands, as modified on July 8, 2022," adding that "the assertion of the objections does not mean that responses are not forthcoming."  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. B at 1).  On July 28, 2022, it then

provided "our response to your July 9, 2022 e-mail request for Supplemental Discovery" as well as "our response to your June 10, 2022 e-mail request for discovery, as modified on July 8, 2022." (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. D at 1; Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. A at 1).  In an e-mail dated August 30, 2022, Gardner's counsel challenged the sufficiency of the document production and asked for supplemental written responses and production.  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. E at 1).  He also requested deposition dates for seven individuals employed by Schneider (including the "Corporate Designee").  (*Id.* at 3).  Schneider's counsel responded by e-mail on September 7, 2022, and, on September 20, 2022, Gardner's attorney e-mailed the topics for the proposed Rule 30(b)(6) deposition.  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. F at 1-2; Ex. G at 1).

A pretrial conference was held on September 19, 2022, and the Court entered an order the same day directing the parties to meet by October 3, 2022, to have a substantive and meaningful conversation about their discovery disputes.  (Minute Entry, ECF No. 51; Order, ECF No. 52, at 1). Counsel met, conferred, and exchanged additional e-mails, but they were unable to resolve their discovery disputes.  (See Def.'s Mot. for Protective Order, ECF No. 53, Certif. of Counsel; Pl.'s Mot. to Compel, ECF No. 54, at 3; Def.'s Resp., ECF No. 56, Certif. of Counsel; Pl.'s Resp., ECF No. 57, at ¶ 9).  On October 11, 2022, Schneider filed its Motion for Protective Order (Def.'s Mot. for Protective Order, ECF No. 53), and Gardner moved to compel depositions and the production of documents (Pl.'s Mot. to Compel, ECF No. 54).  Schneider filed two affidavits in support of its discovery motion on October 12, 2022, and it filed its response to Gardner's Motion to Compel on October 18, 2022.  (Am. Document, ECF No. 55; Def.'s Resp., ECF No. 56).  On October 21, 2022, Gardner filed her opposition to Schneider's motion, and Schneider submitted its reply brief in further support of a protective order.  (Pl.'s Resp., ECF No.

57; Def.'s Reply, ECF No. 58).

## II.   LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal

litigation.  Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible
> in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Although the scope of discovery is broad, it is not unlimited.  *Inventio AG v.*

*Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009); *see also Eisai Inc.*

*v. Sanofi-Aventis U.S., LLC*, Civil Action No. 08-4168(MLC), 2012 WL 628320, at *3 (D.N.J.

Feb. 27, 2012) ("Discovery is not without bounds . . . and courts will not permit parties to engage

in fishing expeditions . . . .") (quoting *MacDermid Printing Sols., L.L.C., v. E.I. du Pont de*

*Nemours & Co.*, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)).  Upon a party's motion or of its

own accord, the Court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to
> obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosure or discovery of the materials sought. *See* Fed. R. Civ. P. 37(a). The moving party must initially demonstrate the relevance of the information sought to a particular claim or defense. *See, e.g.*, *Bostwick v. Shoop*, Civ. No. 1:09-CV-2212, 2010 WL 4536977, at *2 (M.D. Pa. Nov. 3, 2010). Relevance in this context has been "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 349 U.S. 495, 501 (1947)). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Peay v. Fisher*, Civil No. 3:15-cv-00345, 2016 WL 3876634, at *1 (M.D. Pa. July 15, 2016) (citing *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).

Similarly, "the party seeking discovery must first demonstrate . . . relevance before the party seeking a protective order must demonstrate good cause." *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010), *aff'd*, Civil No. 08-6292 (RBK/AMD), 2010 WL 3724271 (D.N.J. Sept. 15, 2010). Once the discovering party demonstrates relevance, the party seeking a protective order must show that good cause exists to limit or foreclose discovery by demonstrating a particular need for protection. *See, e.g.*, *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). In determining whether good cause exists for a protective order, courts employ a balancing test, weighing the requesting party's need for information against the injury that might result if disclosure is compelled. *See, e.g.*, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994). Injury includes annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c)(1). The alleged injury must be "clearly

defined and serious" and "so unreasonable as to justify restricting discovery." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981)); *DeFelice v. Consol. Rail Corp.*, 124 F.R.D. 603, 604 (W.D. Pa. 1989) (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2035 (1970)).  When the information and materials sought are relevant, a court should scrutinize any claim that production would impose a disproportionate burden or expense. *See, e.g.*, 8 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 2008.1 (3d ed. 2022) (footnote omitted).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not establish good cause. *Cipollone*, 785 F.2d at 1121 (citations omitted).

Under Rule 26(c)(1), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  The Third Circuit has set forth a list of seven factors that a trial court may consider in determining if good cause exists to issue a protective order:

> 1) whether disclosure will violate any privacy interests;
>
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> 3) whether disclosure of the information will cause a party embarrassment;
>
> 4) whether confidentiality is being sought over information important to public health and safety;
>
> 5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (quoting *Pansy*, 23 F.3d at 787-91).

This list is not "exhaustive," but neither is it "mandatory." *Id.* The trial court "is best situated to determine what factors are relevant to" any given dispute, but it must always balance private and public interests. *Id.* (quoting *Pansy*, 23 F.3d at 789) (internal citation omitted).

"When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result." *Pansy*, 23 F.3d at 787 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 433–35 (1991)). Rather, if the court determines that disclosure is warranted, the issue becomes whether disclosure should be limited as set forth in Rule 26(c)(1). *See, e.g., id.* "Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously," including, most commonly, by limiting who may access the information and for what purpose. *Pansy*, 23 F.3d at 787 (quoting Miller, *supra*, at 433-35).

In ruling on a discovery motion, the Court must take the facts alleged in the complaint as true. *See, e.g., Venneman v. BMW Fin. Servs., NA, LLC*, No. 2:09-CV-5672-ES-SCM, 2013 WL 3188878, at *1 n.1 (D.N.J. June 21, 2013).

## III.   DISCUSSION

In its motion, Schneider seeks a protective order providing:  (1) that its "Best Practices

Guide" and 2018 and 2019 "Checks for Learning" be produced subject to a confidentiality order; and (2) that Schneider need not produce any algorithms or equations used to generate "Critical Events" and for Schneider to conduct its "Driver Safety Reviews" (or, in the alternative order an in camera review of such documents).  (Def.'s Mot. for Protective Order, ECF No. 53, at 10). Gardner opposes the motion and asks the Court in its response to order Schneider to produce full and complete responses to her requests for production within twenty days.  (Pl.'s Resp., ECF No. 57, at 11).  She also moves for an order compelling production of responsive documents within ten days and the completion of certain depositions within thirty days.  (Pl.'s Mot. to Compel, ECF No. 54, at 7).  In addition to filing an opposition to the Motion to Compel, Schneider submitted a reply brief in further support of its own discovery motion.  (Def.'s Resp., ECF No. 56; Def.'s Reply Br., ECF No. 58).  Schneider requests that the Court (1) protect it from having to produce the Best Practices Guide and "Checklists for Learning" without a confidentiality order, (2) order that Schneider does not have to produce a "Critical Event" algorithm or equation "that does not belong to it and is not its possession," and (3) protect Schneider's "Driver Safety Review" algorithm or equation as an irrelevant trade secret.  (Def.'s Reply Br., ECF No. 58, at 5-6).

Schneider's Motion for Protective Order and Gardner's Motion to Compel are granted in part and denied in part.  Initially, the Court grants the Motion for Protective Order and denies the Motion to Compel as to First RFP Nos. 3 and 10 and Second RFP No. 12.  Schneider shall produce the Best Practices Guide and Checks for Learning but shall do so subject to the entry of a stipulated confidentiality order, to be submitted by the parties within seven days of the date of this memorandum and accompanying order.  The Best Practices Guide and Checks for Learning shall be produced within twenty days of the date of entry of the confidentiality order.  The Court

grants Schneider's Motion for Protective Order and denies Gardner's Motion to Compel as to First RFP No. 11.  The Court denies the Motion for Protective Order as to First RFP No. 13.  The Motion to Compel is granted as to First RFP No. 13 to the extent that Schneider is ordered to produce the algorithms and equations for the "Driver Safety Reviews" subject to the entry of the stipulated confidentiality order.  Schneider shall produce the algorithms and equations within twenty days of the date of entry of the confidentiality order.  The Court also denies the Motion to Compel as to First RFP Nos. 1, 2, 4, 5, and 7 and Second RFP Nos. 1, 3, 4, 5, 6, 8, 9, 10, and 11. Finally, it denies Gardner's motion insofar as it seeks an order compelling the completion of depositions.

A.      **Schneider's Best Practice Guide and Checklists to Learning**

In her first set of RFPs, Gardner asks for the "Schneider Training Book – Highway to Success" (First RFP No. 3) as well as for the following materials: "Table of Contents for all Schneider Human Resources, Operational, Safety, Regulatory Compliance, Accident Investigation and/or Risk Management Policies, Procedures, Practices, Procedures [sic], and/or Guidelines." (First RFP No. 10).  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. A at 1-2).  In Second RFP No. 12, she requests: "Any/all Schneider training or instructional documents related and/or pertaining to co-driving and/or hours of service."  (*Id.* at 1).  Schneider raised relevance and confidentiality objections, but indicated its willingness to produce its "Best Practices Guide (August 2017)" ("Best Practices Guide") subject to a confidentiality agreement.  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. B at RFP No. 3; Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. A at First RFP No. 3).  As to RFP No. 10 and Second RFP No. 12, Schneider raised the same objections and offered to produce the "Annual Business Owner Operator Safety Compliance Commitment 2018 & 2019 Check for Learning [('Checks for Learning')] and the Best Practices

9

Guide (August 2017)" on the condition that the parties execute a confidentiality agreement. (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. B at RFP No. 3; Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. A at RFP No. 10; Pl.'s Mot. to Compel, ECF No. 54-1, Ex. D at RFP No. 12). Counsel for Gardner subsequently claimed that Schneider has failed to provide any basis for confidentiality, and Schneider's counsel reiterated its position that it will produce the documents with a confidentiality agreement.  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. E at 2-3; Ex. C at 1-2).

Relying on an affidavit from Dan Drella, its Director of Safety, as well as the acknowledgement form executed by Boone, Schneider argues that the Best Practices Guide and the Checks for Learning are confidential and proprietary trade secrets that should be produced only under a confidentiality order.  (Def.'s Mot. for Protective Order, ECF No. 53, at ¶¶ 19-25) (citing Def.'s Am. Doc., ECF No. 55, Ex. C at ¶ 4; Def.'s Reply Br., ECF No. 58-1, Ex. A). According to Schneider, Gardner's refusal to consider a confidentiality order suggests that her counsel intends to publish or share its trade secrets.  (*Id.* at ¶ 24).  Quoting Judge Gallagher's ruling in *Mains v. Sherwin Williams Co.*, Civil No. 5:20-cv-00112-JMG, 2022 WL 1443391 (E.D. Pa. May 6, 2022), Schneider contends that its competitors should not be permitted to "plumb through" federal court dockets and "pluck" proprietary information from the filings. (*Id.*) (quoting *Mains*, 2022 WL 1443391, at *1).  Schneider also emphasizes that Boone is prohibited from disclosing or reproducing the Best Practices Guide under the terms of an "Acknowledgement of Receipt" document he had signed before he received the document.  (*Id.* at ¶ 20).

Gardner argues that Schneider has failed to substantiate its confidentiality claims.  (Pl.'s Mot. to Compel, ECF No. 54, at 5; Pl.'s Resp., ECF No. 57, at ¶¶ 7-8).  She contends that the

documents implicate safety concerns and the public interest. (Pl.'s Resp., ECF No. 57, at ¶¶ 7,

19). According to Gardner, the fact that the documents were provided to Boone subject to "a

private non-disclosure agreement" executed by Defendants is not determinative of whether the

Court should enter a confidentiality order. (*Id.* at ¶¶ 20-21). She also asserts that Schneider has

failed to meet its obligation to produce a privilege log under Federal Rule of Civil Procedure

26(b)(5). (*Id.* at ¶ 21). Finally, Gardner attempts to distinguish *Mains* on the grounds that the

documents at issue here do not concern proprietary information about the development of a

"specific, unique product" manufactured by Schneider but instead address standard operating

policies, procedures, and data related to driver safety. (*Id.* at ¶ 24) (addressing *Mains*).

  In its reply brief, Schneider asserts that trade secrets are not limited to manufactured

products. (Def.'s Reply Br, ECF No. 58, at 1). It further argues, "[e]ven if some of Schneider's

policies and procedures are in the public domain, ie., to the extent that they address the Federal

Motor Carrier Safety Regulations, 'the precise configuration, juxtaposition, and assemblage of

this information is sufficient to constitute trade secrets.'" (*Id.* at 2). Schneider cites Safety

Director Drella's affidavit and Boone's acknowledgement form to argue that the Best Practices

Guide and Checks for Learning rise to the level of trade secrets that must be kept confidential as

opposed to mere standard operating policies and procedures. (*Id.* at 2-3) (citing Def.'s Am.

Doc., ECF No. 55, Ex. C; Def.'s Reply Br, ECF No. 58, Ex. A).

  Rule 26(c)(1)(G) provides that this Court may issue an order "requiring that a trade secret

or other confidential research, development, or commercial information not be revealed or be

revealed only in a specified way." It is undisputed that "[a] trade secret may consist of any

formula, pattern, device, or compilation of information which is used in one's business, and

which gives him an opportunity to obtain an advantage over competitors who do not know or use

it." *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir. 1989) (quoting *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1255 (3d Cir. 1985)).  Several factors should be considered in deciding whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease of difficulty with which the information could be properly acquired or duplicated by others.

*Id.* at 199 (quoting *SI Handling*, 753 F.2d at 1256).

Initially, Gardner challenges Schneider's reliance on *Mains,* arguing that this case does not concern "proprietary information related to the development of a specific, unique product manufactured" by the defendant.  (Pl.'s Resp., ECF No. 57, at ¶ 24).  In *Mains*, Judge Gallagher partially granted defendant's motion for sanctions because plaintiff's counsel had violated a confidentiality order by publicly filing "confidential product composition information."  *Mains*, 2022 WL 1443391, at *1-*5.  Gardner points out that *Mains* was a products liability case against a paint manufacturer and that the manufacturer sought protection for "information related to 'tests, experiments, reports, and/or studies made' by Sherwin-Williams as to the product at issue, as well as 'written specifications and composition' of the product."  (*Id.*) (quoting Pl.'s Resp., ECF No. 57-4, Ex. C).  However, it is clear that trade secrets are not limited to a manufacturer's "unique products."  On the contrary, "[[a] trade secret may consist of , , , [a] compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  *Smith*, 869 F.2d at 199 (quoting *SI Handling*, 753 F.2d at 1255).  Accordingly, customer lists, quality control or safety test information, manuals, and operating procedures may rise to the level of trade secrets.  *See, e.g.,*

*id.* at 199-201; *BIEC Int'l, Inc. v. Global Steel Servs.* 791 F. Supp. 489, 542-43 (E.D. Pa. 1992).

As Gardner notes (Pl.'s Resp., ECF No. 57, at ¶ 21), Schneider did not submit a log.  But the rule she cites applies by its own terms "[w]hen a party withholds information otherwise discoverable," Fed. R. Civ. P. 26(b)(5)(A).  Schneider is willing to produce the Best Practices Guide and the Checks for Learning subject to a confidentiality order.  In any event, Schneider has—in its motion, reply brief, and the affidavit sworn by Safety Director Drella—"substantiated by specific examples or articulated reasoning" its trade secret and confidentiality allegations, *Cipollone*, 785 F.2d at 1121.

One of the factors to be considered in determining whether certain information constitutes a trade secret is "the amount of effort or money expended by the owner in developing the information."  *Smith*, 869 F.2d at 199.  Drella averred that the Checks for Learning and the Best Practices Guide were developed for internal use to assist Schneider's owner-operators and are the result of years of extensive knowledge and work undertaken by Schneider employees.  (Def.'s Am. Doc., ECF No. 55, Ex. C at ¶¶ 8-9).  This information has significant value to Schneider as well as its competitors, *see, e.g.*, *id.*  Drella stated that the materials include "unique" strategies designed to promote safety, enhance the driver experience, and assist the owner operators in handling his or her position with the carrier.  (*Id.* at ¶¶ 10-11).  The materials thereby promote Schneider's reputation and its commitment to innovation and improvement, helping it recruit and retain owner-operators.  (*Id.* at ¶¶ 12-14).  Schneider is one of the largest motor carriers in the United States, and its competitors look to what it is doing as an innovator to attract and retain owner-operators.  (*Id.* at ¶ 14).  In fact, "[c]ompetition for qualified owner operators is particularly important at this time as there is a well-publicized industry-wide driver shortage."  (*Id.* at ¶ 15).  Without protection, competitors could take Schneider's strategies,

harming Schneider's position in an already highly competitive market.  (*Id.* at ¶¶ 16-17).

Schneider acknowledges that "some of Schneider's policies and procedures" may be "in the public domain, ie., to the extent that they address the Federal Motor Carrier Safety Regulations" (Def.'s Reply Br., ECF No. 58, at 2), but points out that it has taken steps to maintain the secrecy of the "precise configuration, juxtaposition, and assemblage" of its policies and procedures, *BIEC Int'l*, 791 F. Supp. at 543.  *See, e.g.*, *Smith*, 869 F.2d at 199 (stating that courts should consider extent to which information is known outside of owner's business, extent to which it is known by employees and others involved in business, and extent of measures taken by owner to guard secrecy of information).  The Best Practices Guide "was provided to Chad Boone as an owner-operator only after receipt of a signed confidentiality agreement."  (Def.'s Am. Doc., ECF No. 55, Ex. C at ¶ 4) (citing Def.'s Reply Br., ECF No. 58-1, Ex. A).  In this signed agreement, Boone acknowledged receipt of the Best Practices Guide (or "Manuals"), and expressed his understanding that the "Manuals" constitute Schneider's "confidential and proprietary information" and that unauthorized use or disclosure of the Manuals is "strictly prohibited."  (Def.'s Reply Br., ECF No. 58-1, Ex. A).  He agreed to return the Manuals at the time of any separation—together with any other "confidential or proprietary" documentation.  (*Id.*).  Schneider also emphasizes its intention to take disciplinary and legal action to protect its information from disclosure by its owner-operator, indicating that it would take disciplinary action, including termination or cancellation of his lease, and pursue all legal remedies available to it.  (*Id.*).

"As a general rule courts 'have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure.'  Notes of Advisory Committee on Rules, Fed. R. Civ. P. 26(c)."  *Smith*, 869 F.2d at

199.  However, the information also need not constitute trade secrets to be eligible for protection under Rule 26(c)(1)(G) ("a trade secret *or other confidential research, development, or commercial information*") (emphasis added).  Whether the documents are trade secrets or not, Schneider must still show good cause for a protective order.  *See, e.g.*, *id.*  The Court concludes that, even if the materials at issue here do not rise to the level of trade secrets, Schneider has met its burden under Rule 26(c) and the *Pansy*/*Glenmede* factors to show "good cause" for production of the Best Practices Guide and Checks for Learning subject to the entry of a confidentiality order.

The first *Pansy/Glenmede* factor (whether disclosure will violate any privacy interests) weighs in favor of Schneider.  Given the manner in which Schneider has developed the Best Practices Guide and Checks for Learning, the purposes of the information set forth in the documents (and the harm that could result from disclosure), and the steps taken to protect the information from disclosure, "disclosure [without a confidentiality order] will violate [Schneider's] privacy interests," *Glenmede Tr. Co.*, 56 F.3d at 483.  Because the materials consist of a company's business documents, the "embarrassment" factor does not weigh in favor of Schneider's motion.  *See, e.g., Pansy*, 23 F.3d at 787 ("As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.") (citing *Cipollone*, 785 F.2d at 1121).  With respect to the "purpose" factor, there is no indication that Gardner is seeking the information for an illegitimate or improper purpose.  *See, e.g.*, *Glenmede Tr. Co.*, 56 F.3d at 483.  Additionally, "[s]haring the information among litigants will promote fairness and efficiency," *id.*  However, the "fairness and efficiency" and "purpose" factors ultimately weigh in favor disclosure subject to a

confidentiality order because Gardner will be able to utilize the documents in this litigation.

Citing to two district court opinions, Gardner argues that the interest in public safety weighs against confidentiality and that, as a large motor carrier, Schneider's safety policies and procedures are of particular interest to other drivers. (Pl.'s Resp., ECF No. 57, at ¶¶ 19, 21) (citing *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 787 (E.D. Mich. 2019); *Castellani v. City of Atl. City*, 102 F. Supp. 3d 657, 669 (D.N.J. 2015)).  These cases relied upon by Gardner are unavailing.  The *FCA* court denied the defendant car manufacturer's motion to seal in a prospective class action involving alleged dangerous defects affecting more than 800,000 vehicles.  *FCA*, 377 F. Supp. 3d at 787.  The *FCA* court further reasoned that, "[u]nlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'"  *Id.* at 784 (quoting *Shane Grp, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)); *see also, e.g.*, *In re Avandia Mktg., Sales Practices, & Prods. Liab. Litig.*, 924 F.3d 662, 677 (3d Cir. 2019) ("We conclude that by conflating the *Pansy* factors with the common law right of access standard [applicable to judicial records], the District Court committed an error of law.").  The other case cited by Gardner, *Castellani,* concerned allegations of police misconduct, a topic of great interest to the general public.  *Castellani*, 102 F. Supp. 3d at 669.

Although the documents at issue in this case may involve the policies and practices of a large motor carrier as well as federal statutes and regulations, this case itself still concerns claims filed by one plaintiff against a single tractor truck driver and carrier for injuries allegedly sustained in a traffic accident.  *See, e.g., Lopez v. CSX Transp., Inc.*, Civil Action No. 3:14-257, 2015 WL 3756343, at *7 (W.D. Pa. June 16, 2015) (rejecting plaintiff's argument that railroad was seeking to perpetuate policy of secrecy surrounding numerous train collisions because

16

accident before it did not implicate significant public policy concerns justifying exposure of discovery materials to widespread public dissemination).

This Court has flexibility in crafting a protective order balancing the possible harm to the party seeking protection with the importance of disclosure to the public. *See, e.g.*, *Pansy*, 23 F.3d at 787. Given the circumstances, the Court grants Schneider's Motion for Protective Order and denies Gardner's Motion to Compel as to First RFP Nos. 3 and 10 and Second RFP No. 12. Schneider shall produce the Best Practices Guide and Checks for Learning but shall do so subject to the entry of a stipulated confidentiality order, to be submitted by the parties within seven days of the date of this memorandum and accompanying order. It shall produce the documents within twenty days of the date of entry of the confidentiality order.

**B.    Algorithms and Equations for Critical Events and Driver Safety Reviews**

In First RFP No. 11, Gardner requests "Schneider Critical Event Document including any/all algorithms and/or equations." (Pl.'s Mot. to Compel, ECF No. 11, Ex. A at 2). First RFP No. 13 asks for "[a]ny/all algorithms and/or equations for all Schneider 'Driver Safety Review.'" (*Id*). Schneider claimed that the requests are overly broad and seek irrelevant proprietary information, but it also attested that "there are no Critical Events for the subject accident" and that there are no unedited videos from the tractor trailer from the time period beginning July 6, 2019 and ending July 12, 2019. (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. B at RFP Nos 11, 13; Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. A at RFP Nos. 11, 13). In a follow-up e-mail, Gardner's counsel asked for the production of "the critical event calculation, criteria, algorithm and/or equation," indicating that it is entitled to this information in order to determine how Schneider reached its "self-serving" determination that Boone was a "safe driver" (a characterization that Schneider purportedly will present to the jury). (Pl.'s Mot. to Compel, ECF

No. 54, Ex. E at 2) (citing Pl.'s Resp., ECF No. 57-5, Ex. D at 109:1-6, 110:5-7, 126:22-128:7).

In her e-mail, Schneider's counsel stated that, as to First RFP No. 11, "[t]here is none." (Pl.'s

Mot. to Pl.'s Mot. to Compel, ECF No. 54, Ex. C at 1).

In its Motion for Protective Order, Schneider asserts that it produced the "Driver Safety

Review" it had considered after the accident in preparation for a "skill review" meeting with

Boone. (Def.'s Mot. for Protective Order, ECF No. 53, at ¶ 28) (citing Def.'s Mot. for Protective

Order, ECF No. 53-2, Ex. D). One of the components considered in the review is "Critical

Events." (*Id.* at ¶ 29). According to Schneider, Boone did not have any Critical Events either

before or after the accident. (*Id.* at ¶ 30) (citing Def.'s Mot. for Protective Order, ECF No. 53-2,

Ex. D). Schneider claims that no "Critical Event" document exist and that the algorithm or

equation is thereby irrelevant because of the absence of any Critical Event, and further argues

that "[a]ny and all algorithms or equations used to create a 'critical event' are proprietary to the

manufacturer of the truck engine and are not in possession of Schneider." (*Id.* at ¶ 32) (citing

Def.'s Am. Doc., ECF No. 55, Ex. E).

As to First RFP No. 13, Schneider contends that the equations for the Driver Safety

Reviews are not relevant because the reviews "are used to facilitate further skill review to help

improve safety" and not "to say that a driver is safe." (*Id.* at ¶ 35) (citing Def.'s Am. Doc., ECF

No. 55, Ex. E). Second, it asserts that the equations are not relevant because his score at the time

of the accident was "0." (*Id.* at ¶ 36). Finally, Schneider argues that its "Driver Safety Review"

algorithms and equations are trade secrets, which must be protected from public dissemination.

(*Id.* at ¶¶ 37- 40).

Gardner claims that the information concerning exactly when Critical Events are (or are

not) triggered and how Driver Safety Reviews are conducted is directly relevant to her claims of

vicarious and direct corporate negligence.  (Pl.'s Mot. to Compel, ECF No. 54, at 4; Pl.'s Resp., ECF No. 57, at ¶¶ 27, 30-31, 34, 36).  She discusses the deposition testimony of Clark Brown, a Schneider safety training manager, who testified that, despite Boone running a red light and t-boning Gardner's car, no Critical Events (such as a critical braking event) were created as a result of the accident and Boone's driver safety score was "as good as it gets."  (*Id.*) (quoting Pl.'s Resp., ECF No. 57-5, Ex. D at 110:2-15).  Gardner responds that it assumes Schneider will thereby waive any objections to a third-party subpoena if the "Critical Event" algorithms and equations were in fact not in Schneider's possession but were held by a third party.  (*Id.* at ¶ 32). Finally, she takes issue with that Schneider's purportedly self-serving and conclusory assertions that the requested discovery is confidential and proprietary on the same grounds that she raises concerning the Best Practices Guide and Checks for Learning.  (*Id.* at ¶ 37).

Schneider insists that it does not possess the "Critical Event" algorithm, which belongs to and is in the possession of the truck manufacturer.  (Def.'s Resp., ECF No. 56, at 2 (citing Def.'s Mot. for Protective Order, ECF No. 53; Pl.'s Mot. to Compel, ECF No. 55); *see also* Def.'s Reply Br., ECF No. 58, at 3-4).  It further argues that its "Driver Safety Review" algorithm is irrelevant and that the raw data used in calculating Boone's "Driver Safety Score" has already been produced.  (Def.'s Resp., ECF No. 56, at 3; Def.'s Reply Br., ECF No. 58, at 4-5).  Finally, Schneider asserts that "Driver Safety Review" algorithm is a confidential trade secret that must be protected from disclosure.  (Def.'s Resp., ECF No. 56, at 3; Def.'s Reply Br., ECF No. 58, at 4-5).

The Court grants the Motion for Protective Order and denies the Motion to Compel as to First RFP No. 11.  Schneider stated in its response to this RFP that "there are no Critical Events for the subject accident."  (Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. A at RFP No.

11).  Schneider cannot produce something that does not exist. It is also clear that Schneider does not possess the algorithms or equations that are used to generate "Critical Events."  Schneider Safety Director Drella averred that the "Critical Events" are "generated" by the truck itself and that any algorithms or equations used to generate a "Critical Event" constitute proprietary information of the manufacturer of the truck engine and are not in Schneider's possession. (Def.'s Am. Doc., ECF No. 55, Ex. E at ¶ 9).  "Under ordinary circumstances, a party's good faith averment that the items simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production."  *Margel v.  E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514(PAC)(HBP), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (quoting *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1992)).  The Court accordingly accepts Schneider's representation that it does not possess the "Critical Event" algorithm or equation.

However, the Court denies the Motion for Protective Order as to First RFP No. 13.  The Motion to Compel is granted as to First RFP No. 13 to the extent that Schneider is ordered to produce the algorithms and equations for the "Driver Safety Reviews" subject to the entry of the stipulated confidentiality order.  Schneider shall produce the algorithms and equations within twenty days of the date of entry of the confidentiality order.

Relevance in the discovery context has been "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case."  *Oppenheimer Funds*, 437 U.S. at 351.  Relying on an affidavit from Drella, Schneider asserts that the "Driver Safety Review" process is not used to determine if a driver was safe or qualified.  (*See* Def.'s Mot. for Protective Order, ECF No. 53, at ¶ 35; Def.'s Am. Doc., ECF No. 55, Ex E at ¶¶ 3-4; Def.'s Reply Br., ECF No. 58, at 4).  Yet Schneider also acknowledges that the Driver Safety Review is used as a continuing evaluation of its owner-

operators to monitor their activity and then facilitate further skill review to help improve safety. (Def.'s Reply Br., ECF No. 58, at 4) (citing Def.'s Am. Doc., ECF No. 55, Ex. E at 1). Evaluating the driver's activities operating the vehicle involved in the accident and facilitating a review of his driving skills to help improve safety could bear on, or at least could reasonably lead to other matter that could bear on, the issue of whether the driver's actions (or inaction) rose to the level of negligence as well as whether motor vehicle carrier had adequate policies and procedures in place at the time of the accident.  Federal Rule of Evidence 407 does provide that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measure is not admissible to prove" either "negligence" or "culpable conduct."  The rule, however, goes on to state that "the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures."  In any event, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable," Fed, R. Civ. P. 26(b)(1).  *See, e.g.*, *Bistrian v. Levi*, CIVIL CASE NO. 08-3010, 2015 WL 13867259, at *2 (E.D. Pa. Jan. 30, 2015) (rejecting challenge to discoverability of alleged subsequent remedial measures).

Schneider argues that its "Driver Safety Review" algorithm or equation is not relevant because it has already produced all of the "raw data" and the driver's score at the time of the accident was zero.  (Def.'s Mot. for Protective Order, ECF No. 53, at ¶ 36; Def.'s Reply Br., ECF No. 58, at 4).  The Court does not agree.

It is undisputed that, as Drella explained in his affidavit:

> The Driver Safety Review is [a] mathematical equation containing numerous factors, including, but not limited to, the number of preventable accident [claims], the number of non-preventable accident claims, the number of lost time injuries, the number of workers compensation claims in the past five years, the number of hours of service log violations in the preceding six months, the

number of vehicle incidents, the number of preventable critical events in the last six months, and the number of continuing education courses overdue.

(Def.'s Am. Doc., ECF No. 55, Ex. E at ¶ 7).  For each factor, a numerical value is used to represent the number of times the event specified in the factor has occurred.  (*Id.* at ¶ 8).  "For example, if there are no hours of service log violations in the preceding six months, the number '0' will be used."  (*Id.* at ¶ 8).  Similarly, if the driver had a "vehicle incident," the number "1" will be entered under the "number of vehicle incidents" factor.  Based on the numerical values that have been entered for the various factors, the "Driver Safety Review" equation then generates a numerical value for the driver's "Driver Safety Score."

Schneider produced a "Driver Safety Review" chart for Boone for the week the accident occurred.  (Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. D).  The "Driver Safety Score" was "0," with zeros being entered in the "Preventable Accident Claims," "# Non Preventable Accident Claims," "# Lost Time Injuries," "# Hours of Service Log Violations (Last 6 Months)," "# Logs False (Last Six Months)," "# Vehicle Incidents," "Preventable Critical Events (Last Six Months)," and "# Continuing Education Overdue" columns.  (Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. D at 1).  The "# Work Comp Claims – 5 years" and "Safety MVR Status" columns were left blank, and the document also showed that Boone's "Driver Safety Score 13 Weeks Ago" was "1" (with "-100%" entered for "Driver Safety Score Current to 13 Week Variance").  (*Id.*).

It appears that Schneider thereby has identified (at least some of) the factors it uses in its "equation" to calculate the "Driver Safety Score."  It disclosed that for Boone zeros were entered for (most of) the factors and that Boone's "Driver Safety Score" was also zero.  However, the specific equation that Schneider uses to calculate the score is relevant under Rule 26.  In other

words, how exactly Schneider uses the numerical values for the various factors in its equation to calculate the numerical "Driver Safety Score" could still bear on (or at least lead to evidence relating to) the adequacy of Schneider's process for scoring the "safety" of its own drivers.  As Gardner emphasizes in her response to the Motion for Protective Order (Pl.'s Resp., ECF No. 57, at ¶ 27), Brown (a safety training manager employed by Schneider) testified that Boone's "current safety score . . . is zero," stating "[t]hat's as good as it gets" (Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. D at 1; Pl.'s Resp., ECF No. 57-5, Ex. D at 110:2-15).  Brown's testimony that Boone's current score is "as good as it gets" indicates that Schneider's process for arriving at such a score (a score it uses to facilitate review of the driver's skills and improve safety) is relevant for purposes of discovery.

Schneider invokes the same confidentiality issues that it raises with respect to its Best Practices Guide and Checks for Learning.  (Def.'s Mot. for Protective Order, ECF No. 53, at 10; Def.'s Reply Br, ECF No. 58, at 5-6).  Assuming arguendo that the algorithm rises to the level of a trade secret, the Court determines that Schneider has not established good cause for an order protecting it from disclosure.

The *Glenmede/Pansy* factors weigh in favor of disclosure and against the entry of an order protecting Schneider from turning over the "Driver Safety Review" equation.  Trade secrets do not receive automatic protection from disclosure, and the Court must still weigh the interests in privacy against the need for disclosure.  *See, e.g.*, *Smith*, 869 F.2d at 199.  According to Schneider and Drella, its "Driver Safety" algorithm or equation was created and used solely by Schneider for its own benefit and must be protected from public dissemination so that it can continue to promote safety and remain competitive in an already "tight" market for attracting and retaining owner-operators.  (Def.'s Mot. for Protective Order, ECF No. 53, at ¶¶ 37-40; Def.'s

Resp., ECF No. 56, at 3; Def.'s Reply Br., ECF No. 58, at 5; Def.'s Am. Doc., ECF No. 55, Ex. E at ¶¶ 5-6, 10-15).  However, Schneider's "privacy" interest in its proprietary methodology can be adequately protected by limiting disclosure of the algorithm or equation with the entry of a confidentiality order, *see, e.g.*, *Glenmede Tr. Co.*, 56 F.3d at 483.  There is no indication that Gardner is seeking the information for an illegitimate or improper purpose, and sharing this relevant information among the litigants will promote fairness and efficiency, *see, e.g.*, *id.* Furthermore, the "embarrassment" factor does not weigh in favor of Schneider.  *See, e.g., Pansy*, 23 F.3d at 787 (indicating that business may find it difficult to argue for protective order on grounds of "embarrassment").  The fact that the equation is used by Schneider (one of the largest motor carriers in the United States) to promote safety also weighs in favor of disclosure (Def.'s Am. Doc., ECF No. 55, Ex. E at ¶¶ 6, 12).  *See, e.g.*, *Glenmede Tr. Co.*, 56 F.3d at 483 ("whether disclosure is being sought over information important to public health and safety"); *Lopez*, 2015 WL 2015 WL 3756343, at *7 (noting that defendant railroad does not object to plaintiff seeking discovery but only to its public dissemination).  Accordingly, the Court orders disclosure of the "Driver Safety Review" algorithms and equations subject to the entry of the stipulated confidentiality order.

### C.   Non-Existing Documents and Spoliation

The parties further dispute the adequacy of Schneider's responses to multiple document requests.  Schneider responded that there are no responsive documents (or, in one instance, produced the responsive documents and indicated that there are no additional materials responsive to the RFP).  (Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. A at RFP Nos. 1, 2, 4, 5, 7; Pl.'s Mot. to Compel, ECF No. 54-1, Ex. D at RFP Nos. 1, 4, 6, 8, 9).  In her Motion to Compel, Gardner contends that "Defendant has simply not yet produced" the documents

requested in First RFP No. 5 (requesting "Schneider PBSA Document for driver Chad Boone from 7/6/19 – 7/12/19") and Second RFP No. 4 (asking for "[a]ny messaging or other correspondence to, from and/or between Schneider, Sabrina Miller and/or Chad Boone from 7/6/19 to present").  (Pl.'s Mot. to Compel, ECF No. 54, at 4).  As to the other RFPs, she asserts that Schneider was on notice of its obligation to preserve information because of a spoliation letter provided on July 30, 2019.  (*Id.* at 6).  "Plaintiff seeks to understand whether the information was destroyed or whether it never existed, to determine whether defendants spoliated evidence."  (*Id.*).  Claiming that "none" is an insufficient response, she requests an instruction for Schneider to identify whether the respective documents existed and were destroyed or whether they never existed in the first place.  (*Id.*).  With respect to Second RFP No. 4, Schneider's opposition states the following: "Undersigned counsel has confirmed that there is none."  (Def.'s Resp, ECF No. 56, at 3).  Concerning the other RFPs, Schneider observes that Gardner seeks documents that do not exist and that a party cannot be compelled to produce non-existing documents.  (*Id.* at 2-3).  Schneider asserts that the fact no documents exist does not mean that there has been some sort of "nefarious activity."  (*Id.*).  Arguing that Rule 34 mandates production of the responsive documents as opposed to an explanation for why there no responsive documents, Schneider contends that, if further inquiries are desired, follow-up questions can be asked during the deposition of the corporate designee.  (*Id.*).  The Court denies the Motion to Compel as to First RFP Nos. 1, 2, 4, 5, and 7 and Second RFP Nos. 1, 4, 6, 8, and 9.  Under Federal Rule of Civil Procedure 34(a)(1)(A), a party may serve on any other party a request to produce "any designated documents or electronically stored information."  Schneider has complied with its obligations under the rule by providing complete responses to Gardner's requests for production of documents.  It has done so by either stating that there are no

responsive documents or, with respect to Second RFP No. 4, producing the driver messages for both Boone and Miller and subsequently clarifying that there are no additional responsive documents.  (Def.'s Mot. for Protective Order, ECF No. 53-2, Ex. A at RFP Nos. 1, 2, 4, 5, 7; Pl.'s Mot. to Compel, ECF No. 54-1, Ex. D at RFP Nos. 1, 4, 6, 8, and 9; Def.'s Resp., ECF No. 56, at 3).  "Under ordinary circumstances, a party's good faith averment that the items simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production."  *Margel*, 2008 WL 2224288, at *11.  "This Court cannot compel the production of documents that do not exist."  *Banks v. Beard*, Civ. No. 3:CV-10-1489, 2013 WL 3773837, at *2 (M.D. Pa. Jul. 17, 2013) (citing *Susquehanna Commercial Fin., Inc. v. Vascular Res., Inc.*, No. 09-2012, 2010 WL 4973317, at *6 (M.D. Pa. Dec. 1, 2010)).  Schneider has done all it was required to do in answering the applicable requests for production of documents.  As Schneider observes, Gardner's counsel can ask follow-up questions during the corporate designee deposition.  (Def.'s Resp., ECF No. 56, at 4).

### D.    Miller Documents

Gardner moves for an order to compel production of documents regarding Sabrina Miller requested in Second RFP Nos. 3, 5, 10, and 11.  Specifically, she requests her tracking reports from July 6, 2019 to July 12, 2019 (Second RFP No. 3), Miller's "[d]river file" (Second RFP No. 5), and Schneider Driver Safety Reviews for Miller from "hire to present" (Second RFP Nos. 10-11).  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. A at 1).  Producing Boone's tracking reports, Schneider objected to Second RFP No. 3 as overly broad and claims that it seeks documents of a non-party.  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. D at RFP No. 3).  It raised similar objections to the other requests.  (*Id.* at RFP Nos. 5, 10, 11).  Counsel for Gardner subsequently restated his client's requests, claiming that Miller was present and contributed to the "co-driving

scenario" causing the crash.  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. E at 2-3).  Schneider's

counsel responded that "Sabrina was not driving" and referred Gardner to its response to the

RFPs.  *(*Pl.'s Mot. to Compel, ECF No. 54-1, Ex. C at 1).

Gardner argues that Miller was Boone's co-driver, an agent of Schneider, and like Boone,

was fired by a prior employer for "violations of hours-of-service logs."  (Pl.'s Mot. to Compel,

ECF No. 54, at 6).  She claims that there is an issue in this case of whether service hours were

properly logged and tracked.  (*Id.*)  Emphasizing that Miller was Boone's co-driver, was not

driving at the time of the accident, and has not been named a party to this action, Schneider

argues that her private personal history (from "hire to present") is not relevant.  (Def.'s Resp.,

ECF No. 56, at 4-6).  As to the "hours-of-service" issue, it claims that this is a new allegation

without any factual basis other than the assertion that Boone and (presumably) Miller were fired

from a prior employer for log violations.  (*Id.* at 5).  In any event, it has already provided the

documents needed to evaluate the claim of log violations as to Boone himself.  (*Id.*).

The Court concludes that Gardner has failed to meet her burden of establishing the

relevance of the Miller documents and that, even if the documents may have some relevance to

this case, her requests are unduly burdensome.  It is undisputed, that, although she was Boone's

"co-driver," Miller was not actually driving the tractor-trailer at the time of the accident, and she

is not a party to this litigation.  Gardner does not explain why the various documents she seeks

concerning such an individual are relevant to her claims against the actual driver and the motor

carrier.  In any event, Schneider has already produced Miller's driver logs, driver messages, and

"RAIR" report.  (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. D at RFP Nos. 2, 4, 7).  Yet Gardner

asks for "Schneider Driver Safety Reviews for Samira [sic] Miller from *hire to present*."  (Pl.'s

Mot. to Compel, ECF No. 54-1, Ex. A at 1) (emphasis added).  Gardner also requests Miller's

entire "[d]river file" (Pl.'s Mot. to Compel, ECF No. 54-1, Ex. A at 1).  Her file  nevertheless

contains private personal information about an owner-operator who is not a named party to this

litigation.  *See, e.g.*, *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241-42 (E.D. Va. 2012)

(stating that request for entire employment file is overly broad on its face).

Accordingly, the Court denies Gardner's Motion to Compel as to Second RFP Nos. 3, 5,

10, and 11.

### E.    Depositions

Gardner also requests an order compelling the completion of depositions within thirty

days.  (Pl.'s Mot. to Compel, ECF No. 54, at 7).

The Court denies Gardner's motion to the extent that it seeks an order compelling the

completion of depositions.  Gardner acknowledges in her motion that there is no apparent

problem with scheduling depositions and that she is seeking judicial intervention merely because

the depositions have not yet been scheduled.  The Court fully expects that the parties will work

cooperatively to schedule the remaining depositions as expeditiously as possible, and therefore

denies the motion to compel depositions without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Schneider's Motion for Protective Order and Gardner's

Motion to Compel are granted in part and denied in part.

BY THE COURT:


_/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge